## Evelyn M. Harmon, Appellee, v. Peoria Railway Company, Appellant.

### Gen. No. 5408.

1. VERDICTS—*when not disturbed.* A verdict will not be set aside on review as against the evidence even though the defendant's theory appeared to be sustained by more evidence than that of the plaintiff. In order to justify the setting aside of the verdict as against the evidence there must be a clear preponderance in favor of the defendant.

2. NEGLIGENCE—*when violation of ordinance will not support recovery.* Negligence unless it appears to have been the proximate cause of the injury complained of, will not support a recovery.

3. NEGLIGENCE—*when prior acts not competent.* Negligence at a particular time cannot be established by proof of similar acts of negligence at other times.

4. NEGLIGENCE—*when proof of custom competent.* A custom of stopping cars at a particular point upon a street is competent in connection with the determination of the question as to whether or not it is negligence to run a car past another car which is in the act of discharging passengers.

5. ORDINARY CARE—*when proof of custom competent.* The custom of a traction company to stop its cars at a particular place being shown to have been known to the plaintiff may be competent as bearing upon the exercise of ordinary care.

6. EVIDENCE—*effect where competent for any purpose.* If evidence is properly admissible under any issue in the case, or for any purpose, it should not be excluded. The effect, however, should be limited to its proper office in the case, and the party desiring its effect limited should request an instruction limiting it to the purpose for which it was admitted.

7. INSTRUCTIONS—*approved form upon right of recovery.* An instruction as follows is approved and specifically held not erroneous with respect to its statement of the law as to the exercise of ordinary care.

"The court instructs you that if you believe from the greater weight of the evidence that the defendant was guilty of the negligence, in manner and form as charged by the plaintiff in her declaration, or some count thereof, and that the plaintiff was injured thereby, while she was in the exercise of that degree of care and caution for her own safety that a reasonably careful and prudent person would have exercised under all the existing curcumstances, at the time it is claimed she received the alleged injuries, then you should find the defendant guilty."

Action in case for personal injuries. Appeal from the Circuit

Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed April 6, 1911. *Certiorari* denied by Supreme Court (making opinion final).

LE FORGEE, VAIL & MILLER, GEORGE W. BURTON, H. C. DILLON, and GEORGE T. BLACK, for appellant.

QUINN, QUINN & McGRATH, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action on the case brought by Evelyn M. Harmon against the Peoria Railway Company to recover for injuries sustained by her from being struck by one of appellant's street cars in the city of Peoria. The case was tried on a declaration consisting of five counts. The first count avers that plaintiff became a passenger on one of defendant's cars going south on Washington street, and alighted therefrom near the corner of Harrison street and as she walked around the rear end of the car to cross the street, she came to the east track of defendant, and while she was crossing the same in the exercise of due care, she was struck by another car of defendant running north at a high rate of speed on the east track of defendant's double track street railway, and avers that defendant negligently ran said car against her without any warning. The second count is similar but avers a custom of defendant, at that street crossing, to stop its south bound cars north of the north line of Harrison street, and that defendant negligently ran its cars in a northerly direction on its east track at a high rate of speed without ringing a bell, while the car from which she alighted was standing still. The third count is similar to the second, but avers more of the details. The fourth is based on an ordinance requiring a gong to be sounded on cars while approaching crossings for at least one hundred feet and until the crossing is reached, and avers a failure to comply with the ordinance on

the car by which she was injured. The fifth is based on an ordinance requiring street cars to stop at street crossings with the rear platform of the car at the further side or walk, so as not to interfere with travel at street intersections, and avers that the car from which plaintiff alighted was negligently stopped at the "near side of walk," etc. Plaintiff recovered a verdict and a judgment for $3,500, from which the defendant appeals.

The proof shows that Washington street in Peoria runs north and south, and that the defendant operates a double track electric street railway on it. The cars running south use the west track, and the north bound cars the east track. Harrison street runs east and west across Washington street in a busy business portion of the city. The Board of Trade Building is situated at the northeast corner of the intersection of these streets and is sixty-seven feet wide with the main entrance in the center of the Washington street front.

Appellee was a stenographer employed in the Board of Trade Building. About one o'clock on December 1, 1908, appellee got on a car on Washington street coming from the north towards Harrison street. As the car passed the street next north of Harrison street there were only three passengers on the car. A young lady, a companion employed in the same building with appellee, signalled the conductor to stop at Harrison street. The conductor gave the motorneer the signal to stop at Harrison street, opened the rear car door and called the street. Appellee and her companion testified that the car stopped on the north side of Harrison street with the front platform about even with the north cross walk, and other witnesses testified that after the accident the car was still standing there. Appellee and her companion got off the car at the west rear door, walked around behind the car and started to cross the east track opposite the entrance to the Board of Trade Building, when she was struck

by the left hand corner of the front vestibule of a car going north and her leg was broken. The conductor and motorneer of both cars, two of whom were not in the employment of appellant at the time of the trial, and one other witness, testified that the car appellee was riding on did not stop at the north crossing, but slowed down to two or three miles an hour, and that it did not stop until it passed the south cross walk.

The evidence is conflicting as to whether a gong on the car that struck appellee was ringing or not. The evidence of appellee is that she neither heard nor saw the car until it struck her and does not know of her own knowledge that it was a car that struck her; her companion and one other witness testified they heard no gong. The conductors and motorneers on the two cars all testified that the gong on the car that collided with appellee was ringing as the car approached Harrison street and until the accident.

On behalf of appellee her companion testified as to the speed of the car at the time of the accident that it was going at the rate of six or seven miles an hour and one other witness testified it was going fifteen miles an hour at that time, and that it went about sixty feet after the accident. On behalf of appellant the evidence of five witnesses, the motorneers and conductors, two of whom are not now in the employment of appellant, and a disinterested witness, is that the car was going at not to exceed from four to six miles an hour at the time of the accident, that the schedule time was twenty-four minutes for three miles and that it is a rule of the company to ring the gong as they approach street crossings and pass other cars and to go slow in passing street crossings and other cars.

The space between the cars as they pass is less than two feet. The motorneer on the car that collided with them testified he did not see them on account of the other car until they were about to step upon the track his car was on and the car hit them, and that

at that time the rear of the other car was about op
posite the middle of his car. The motorneer on the
car that struck appellee, not now in the employ of
appellant, testified that when he first saw the appellee
and her companion they were just stepping over the
east rail of the southbound track; that they were bent
over with their heads toward the wind facing almost
directly toward the Board of Trade Building; that
the fender was down about four inches above the track
and extended four or five feet in front of the car and
reached over each rail; that he dropped the fender on
the rails and did all he could to stop the car; that the
part of the car that struck appellee is the part where
the steps join onto the body of the car, and that the
girls were walking fast and ran against the car. The
conductor of the car appellee got off, testified he was
on the rear end of the car they got off, that he saw
the other car coming as appellee and her companion
were crossing the track his car was on; that his atten-
tion was attracted by the ringing of the gong and he
called to the girls to look out for the other car but
does not think they heard him; that they were walking
fast in a stooped position; that he thinks appellee had
her hand up holding her hat with her head bent toward
the approaching car with her face directed away from
the car, and that they ran against the side of the front
vestibule. Another witness in the employ of the Gas
Company testified he saw the girls running across the
street with their heads in a stooping position, and that
it seemed they were looking down to the ground run-
ning across the street.

Appellee denied that she ran across the track and
that she had her hand up holding her hat. She also
testified she was familiar with the way cars ran on the
double track system at that place and rode on them
daily; that it had been the custom of appellant for two
or three years to stop the cars on the south bound
track at the place where she was injured and for her

to alight there; that she knew the distance between the cars when they passed; that she walked behind the car she got off, directly behind it; that when she started around the end of the car she did not know that a car might be approaching from the south because "I had no warning of the car and I never dreamed or anticipated for one minute that a car was coming there;" and that "of my knowledge, I don't know what hit me."

The question of (1) whether the car that collided with appellee was run at a dangerous rate of speed, (2) whether a bell or gong was kept ringing or sounding for at least a distance of one hundred feet until an intersecting street is reached, and (3) whether appellee at the time of the injury was in the exercise of due care, are questions of fact upon which the evidence is conflicting and on which reasonable men might disagree. Appellant appears to have more evidence on the first two questions than appellee but we cannot say there is such a clear preponderance of evidence in favor of appellant on the questions of negligence that we should disturb the verdict, or that appellee did not prove she was in the exercise of due care by a preponderance of the evidence.

Under the ordinance introduced in evidence requiring the sounding of a gong, appellant was not required to sound it after Harrison street was reached by the north bound car. The terms of the ordinance do not require the sounding of the gong by the north bound car for a distance of about ninety feet before it reached the place where the accident happened, and we are of the opinion that the judgment could not be sustained under the fourth count, for the reason that the evidence presented by appellee does not show the bell was not sounded before Harrison street was reached but does tend to show the gong was not sounded after such street was reached and while passing the standing car.

The fifth count avers an ordinance requiring appellant to stop its cars "with the rear platform of the

car at the further side or walk thereof, so that the car when stopped shall not interfere with public travel on such intersections or crossings." The car that struck appellee had no passengers to get off at Harrison street and hence did not stop at that intersection. It does not appear that the violation of that ordinance was the proximate cause of appellee's injury; so far as the evidence shows the accident might have happened in the same way had the car stopped at the far crossing.

The appellee proved by a number of witnesses, against the objection of appellant, the custom of appellant for several years to stop its cars going south in front of the Board of Trade Building. The overruling of objections to this character of evidence is assigned for error. This evidence was not proper to prove the fifth count, for the reason that the negligence alleged could not be proved by similar acts at other times. West Chicago St. Ry. Co. v. Torpe, 187 Ill. 610; Taylor Coal Co. v. Dawes, 220 Ill. 145; Hackart v. Decatur Coal Co., 243 Ill. 49; C. B. & Q. R. R. Co. v. Lee, 60 Ill. 501; Chicago and Alton Ry. Co. v. Johnson, 128 Ill. App. 20. However, we hold that this evidence was competent under the third count, which avers a custom of appellant for many years to stop its cars in front of the Board of Trade Building, for the accommodation of patrons of appellant who were occupants of that building. It was incumbent on appellant to use ordinary care to avoid injuring travelers on the street. If it was the custom of appellant for many years to stop its cars where the south bound car stopped to let appellee alight, then appellant had knowledge of the custom, and knowledge of appellant was knowledge to its employes. In such case ordinary care on the part of appellant would require more caution in running its cars past a car, standing or moving slowly at that place, than passing a car at a place where appellant was not accustomed to stop for passengers to alight. If it were the custom of appellant

to stop its cars on the west track at the north side of
Harrison street for its patrons to alight and go from
the north end of the car directly to the entrance of the
Board of Trade Building, then ordinary care in run-
ning a car on the other track past the standing car
would require the same care that the law requires to
be exercised in passing a car discharging passengers
on a sidewalk crossing.  It may be a question in the
mind of a reasonable person whether it is not negli-
gence in a common carrier to run a car past another
car discharging passengers at a place where it is accus-
tomed to discharge them.  We are of the opinion that the
evidence was competent to prove the knowledge of ap-
pellant, and its employes in charge of its cars, of the
danger arising from such custom, to parties alighting
from its cars and going towards the Board of Trade
Building.   Chicago City Ry. Co. v. Lowitz, 218 Ill. 24;
Chicago City Ry. Co. v. Sugar, 117 Ill. App. 578.   If
evidence is properly admissible under any issue in the
case, or for any purpose, it should not be excluded.
Ruggles v. Gatton, 50 Ill. 412; People v. Hagenow, 236
Ill. 514.   The effect however should be limited to its
proper office in the case, and the party desiring its
effect limited should request an instruction limiting it
to the purpose for which it was admitted.

Appellee and her companion testify the car that
struck them gave no warning of its approach.   The
evidence as to the distance the car went after the acci-
dent before it stopped, with the fact that it was going
up grade, tends to corroborate the evidence of appellee
that the car was running at a dangerous rate of speed
in passing a car discharging passengers.   Whether or
not the appellant was negligent in running its cars and
whether the appellee was in the exercise of due care
at the time of the accident were, under the evidence
in this case, questions peculiarly within the province
of a jury and we cannot say there was manifest error
in the verdict.   Judgments have been sustained where
the party struck was either killed or injured under

similar circumstances. Stack Admr. v. East St. L. Ry. Co., 245 Ill. 308; Chicago City Ry. Co. v. Robinson Admx., 127 Ill. 9; Rastetter Admx. v. Peoria Ry. Co., 142 Ill. App. 417; West Chicago St. Ry. Co. v. Nilson, 70 Ill. App. 171.

It is also contended that there was error in giving appellee's first instruction. The instruction is:

"The court instructs you that if you believe from the greater weight of the evidence that the defendant was guilty of the negligence, in manner and form as charged by the plaintiff in her declaration, or some count thereof, and that the plaintiff was injured thereby, while she was in the exercise of that degree of care and caution for her own safety that a reasonably careful and prudent person would have exercised under all the existing circumstances, at the time it is claimed she received the alleged injuries, then you should find the defendant guilty," etc.

Appellant insists that the case of Krieger v. Aurora, Elgin & C. R. R. Co., 242 Ill. 544, is decisive in favor of its contention. The first three counts in the declaration in this case aver "that in crossing said street as aforesaid she came to and started across said track nearest the easterly side of said Washington street; that she was then and there in the exercise of due care." The fourth count avers she was in crossing said Washington street in the exercise of due care. The fifth count avers that plaintiff after alighting from said car at the time and place aforesaid and while in the exercise of due care, etc. These counts all aver due care from the time she alighted and while crossing Washington street; the averment of due care is not confined to the time she was crossing the track upon which she was injured, but covers all the time she was on the street, so that the Krieger case is not in point. Furthermore, the instruction itself refers to the negligence alleged in the declaration and does not refer to the allegation concerning due care. The statement in the instruction is, if the jury believe from all

the evidence that while she was in the exercise of that degree of care and caution for her own safety that a reasonably careful and prudent person would have exercised under all the existing circumstances at the time, etc. The instruction clearly applies to all that appellee did in crossing the street and is free from the error contended for. Moreover, the court at the request of appellant gave seven instructions to the jury on that question. Five of these are very lengthy and argumentative and direct the jury's attention to particular facts that appellant considered show a want of due caution. The appellant has no cause of complaint concerning instructions, since they are much more favorable to appellant than it was entitled to.

It is also insisted it was error for the court to refuse instructions directing a verdict for the appellant on each of the counts. If there is one good count supported by the evidence, it is not error to refuse to direct a verdict on the other counts which may not be supported by the evidence. Scott v. Parlin & Orendorff Co., 245 Ill. 460.

Finding no reversible error in the case the judgment is affirmed.

*Affirmed.*